Robert A. Ball, California Bar No. 70061
John M. Donnelly, California Bar No. 156965
LAW OFFICES OF ROBERT A. BALL
225 Broadway, Suite 2220
San Diego, California 92101
Telephone: (619) 234-3913; Facsimile: (619) 234-4055
Email: rball@robertballapc.com, jdonnelly@robertballapc.com

Benjamin H. Davidson, II, State Bar No. 05430590
Mary Kathleen Davidson, State Bar No. 24070919
McCLESKEY HARRIGER BRAZILL & GRAF LLP
5010 University Avenue, Suite 500
Lubbock, Texas 79413
Telephone: (806) 796-7306; Facsimile: (806) 796-7365
Email: bdavidson@mhbg.com, kdavidson@mhbg.com

Attorneys for: Plaintiffs KAREN DI PIAZZA, Individually and as Mother to CORBIN JAEGER and as Personal Representative of the Estate of CORBIN LEE JAEGER, Deceased

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF TEXAS, LUBBOCK DIVISION**

KAREN DI PIAZZA, Individually and As Mother to CORBIN JAEGER and As Personal Representative of the Estate of CORBIN LEE JAEGER, Deceased,

Plaintiff,

v.

WEATHER GROUP TELEVISION, LLC dba THE WEATHER CHANNEL, a Georgia limited liability company; WEATHER GROUP, LLC, a Delaware limited liability company; CF ENTERTAINMENT, INC. dba ENTERTAINMENT STUDIOS, a California corporation; ENTERTAINMENT STUDIOS NETWORKS, INC., a California corporation; ENTERTAINMENT STUDIOS MEDIA, INC., a California corporation; ENTERTAINMENT STUDIOS MEDIA HOLDINGS, INC., a Delaware corporation; NBCUNIVERSAL MEDIA, LLC, a Delaware limited liability company; BAIN CAPITAL INVESTORS, LLC, a Delaware limited liability company; THE BLACKSTONE GROUP, INC., a Delaware corporation; TV HOLDINGS 1, LLC, a Delaware limited liability company; TV HOLDINGS 2, LLC, a Delaware limited

**CIVIL ACTION**

**CASE NO. 5-19CV0060-C**

**PLAINTIFF'S RESPONSE TO DEFENDANT SHEENA BITTLE'S, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF KELLEY GENE WILLIAMSON, MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, OR ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT**

liability company; TV SPINCO LLC, a Delaware limited liability company; SHEENA BITTLE as Personal Representative of the Estate of KELLEY GENE WILLIAMSON; KEITH DANIELS as Personal Representative of the Estate of RANDALL D. YARNALL,

Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANT SHEENA BITTLE'S, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF KELLEY GENE WILLIAMSON, MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, OR ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT**

## TABLE OF CONTENTS


TABLE OF CONTENTS…………………………………………………………………………i

TABLE OF AUTHORITIES………..……………………………………………………….ii, iii

RESPONSE TO MOTION TO DISMISS..………………………..………………………………1

I. Statement of the Case………………………………………………………......2

II. Standards for Dismissal…………………………………………………………...6

III. Plaintiff Has Stated Claims Upon Which Relief May Be Granted………....7

a. The First Amended Complaint Sufficiently Pleads That Williamson and Yarnall Were Engaged in a Joint Enterprise……………………………………………………………...7

b. The First Amended Complaint Sufficiently Pleads That Williamson Breached an Independent Duty As Passenger of the Suburban………………………………………….....9

c. The First Amended Complaint Sufficiently Pleads a Claim for Gross Negligence Against Williamson……………………10

IV. Defendant's Alternative Motion for a More Definite Statement Per Federal Rule of Civil Procedure 12(e) Should be Denied……………....12

V. Plaintiff Requests Leave to Amend in the Event the Motion is Granted....13

VI. Conclusion and Prayer………………………………………………………...13




LAW OFFICES OF
ROBERT A. BALL
225 BROADWAY, SUITE 2200
SAN DIEGO, CA 92101-5019
TELEPHONE 619-234-3913

## TABLE OF AUTHORITIES

### CASES

*Adams v. Morris*
584 S.W.2d 712 (Tex. App.—Tyler 1979)....................9, 10, 13

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)....................12

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)....................6, 12, 13

*Campbell v. Wells Fargo Bank*
781 F.2d 440 (5th Cir. 1986)....................6

*Castilleja v. Southern Pacific Co.*
406 F.2d 669 (5th Cir. 1969)....................9

*Choctaw Nation of Okla. v. Sewell*
2018 WL 2410550 (Tex. App.—Dallas 2018)....................9

*Cinel v. Connick*
15 F.3d 1338 (5th Cir. 1994)....................6

*Dudley v. Whatley*
400 S.W.2d 773 (Tex. Civ. App.—Houston 1966)....................9

*Edmiston v. Texas & N.O.R. Co.*
138 S.W.2d 526 (Tex. Com. App. 1940, opinion adopted)....................9

*Estate of Whistler*
513 S.W.2d 10, 16–17 (Tex.1974)....................8

*Fuller v. Flanagan*
468 S.W.2d 171 (Tex. App.—Fort Worth 1971)....................8, 9, 13

*Hishon v. King & Spalding*
467 U.S. 69, 73 (1983)....................6

*Mahone v. Addicks Utility District of Harris County*
836 F.2d 921 (5th Cir. 1988)....................6, 7

*Mobil Oil Corp. v. Ellender*
968 S.W.2d 917, 921 (Tex.1998)....................11



LAW OFFICES OF
ROBERT A. BALL
225 BROADWAY, SUITE 2200
SAN DIEGO, CA 92101-5019
TELEPHONE 619-234-3913

*Raynor v. Dillon*
501 S.W.3d 143 (Tex. App.—Texarkana 2016)........................................11, 12, 13

*Rhea v. Williams*
802 S.W.2d 118 (Tex. App.—Fort Worth 1991).......................................7, 8, 9, 13

*Shoemaker v. Estate of Whistler*
513 S.W.2d 10 (Tex.1974)......................................................................................7

*Tempur-Pedic Int'l Inc. v. Angel Beds LLC*
902 F.Supp.2d 958 (SD TX 2012).........................................................................12

*Tipton v. Stuart*
480 S.W.2d 795 (Tex. App.—Ft. Worth 1972)...........................................9, 10, 13

*U–Haul Int'l, Inc. v. Waldrip*
380 S.W.3d 118 (Tex. 2012)..................................................................................11

**STATUTES**

Federal Rules of Civil Procedure
Rule 8(a)(2)..............................................................................................................6
Rule 12(e)...........................................................................................................12, 13

Texas Civil Practice and Remedies Code
§ 41.001(11)(A)...................................................................................................11, 13
§ 41.001(11)(B)...................................................................................................11, 13



LAW OFFICES OF
ROBERT A. BALL
225 BROADWAY, SUITE 2200
SAN DIEGO, CA 92101-5019
TELEPHONE 619-234-3913

Robert A. Ball, California Bar No. 70061
John M. Donnelly, California Bar No. 156965
LAW OFFICES OF ROBERT A. BALL
225 Broadway, Suite 2220
San Diego, California 92101
Telephone: (619) 234-3913; Facsimile: (619) 234-4055
Email: rball@robertballapc.com, jdonnelly@robertballapc.com

Benjamin H. Davidson, II, State Bar No. 05430590
Mary Kathleen Davidson, State Bar No. 24070919
McCLESKEY HARRIGER BRAZILL & GRAF LLP
5010 University Avenue, Suite 500
Lubbock, Texas 79413
Telephone: (806) 796-7306; Facsimile: (806) 796-7365
Email: bdavidson@mhbg.com, kdavidson@mhbg.com

Attorneys for: Plaintiffs KAREN DI PIAZZA, Individually and as Mother to CORBIN JAEGER and as Personal Representative of the Estate of CORBIN LEE JAEGER, Deceased

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF TEXAS, LUBBOCK DIVISION**

KAREN DI PIAZZA, Individually and As Mother to CORBIN JAEGER and As Personal Representative of the Estate of CORBIN LEE JAEGER, Deceased,

Plaintiff,

v.

WEATHER GROUP TELEVISION, LLC dba THE WEATHER CHANNEL, a Georgia limited liability company; WEATHER GROUP, LLC, a Delaware limited liability company; CF ENTERTAINMENT, INC. dba ENTERTAINMENT STUDIOS, a California corporation; ENTERTAINMENT STUDIOS NETWORKS, INC., a California corporation; ENTERTAINMENT STUDIOS MEDIA, INC., a California corporation; ENTERTAINMENT STUDIOS MEDIA HOLDINGS, INC., a Delaware corporation; NBCUNIVERSAL MEDIA, LLC, a Delaware limited liability company; BAIN CAPITAL INVESTORS, LLC, a Delaware limited liability company; THE BLACKSTONE GROUP, INC., a Delaware corporation; TV HOLDINGS 1, LLC, a Delaware limited liability company; TV HOLDINGS 2, LLC, a Delaware limited

**CIVIL ACTION**

**CASE NO. 5-19CV0060-C**

liability company; TV SPINCO LLC, a Delaware limited liability company; SHEENA BITTLE as Personal Representative of the Estate of KELLEY GENE WILLIAMSON; KEITH DANIELS as Personal Representative of the Estate of RANDALL D. YARNALL,

Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANT SHEENA BITTLE'S, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF KELLEY GENE WILLIAMSON, MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, OR ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT**

Plaintiff KAREN DI PIAZZA, INDIVIDUALLY AND AS MOTHER TO CORBIN JAEGER AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF CORBIN LEE JAEGER, DECEASED ("Plaintiff") respectfully requests that the Court deny Defendant SHEENA BITTLE'S, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF KELLEY GENE WILLIAMSON ("Defendant") Motion to Dismiss for Failure to State a Claim, or alternatively, Motion for More Definite Statement per Federal Rule of Civil Procedure 12(b)(6) and 12(e) ("Motion").

## I. STATEMENT OF THE CASE

Plaintiff brought these wrongful death and survivor claims under Texas Civil Practice & Remedies Code sections 71.002 and 71.021 to recover damages for the death of her son Corbin Lee Jaeger ("Jaeger"), which were directly and proximately caused by the acts and omissions of the named Defendants. [1]

Jaeger was killed in a horrific two-vehicle collision outside the town of Spur, Texas on March 28, 2017 when a Chevrolet Suburban SUV ("Suburban") driven by Randall Yarnall ("Yarnall") and occupied by Kelley Gene Williamson ("Williamson") ran a stop sign

[1] Pl's First Amend. Compl. at ¶¶ 52-65.



LAW OFFICES OF ROBERT A. BALL
225 BROADWAY, SUITE 2200
SAN DIEGO, CA 92101-5019
TELEPHONE 619-234-3913

at seventy (70) miles per hour while racing to film a tornado on behalf of the named entity Defendants (collectively identified herein as "TWC") and collided with Jaeger's vehicle, a 2012 Jeep Patriot ("Jeep"), while the Jeep had the right of way on westbound FM2794 ("Subject Accident").[2] According to the operative pleading, Yarnall and Williamson, who also died in the collision, were in the course and scope of their employment as storm chasers and television personalities with TWC when their Suburban ran the stop sign on northbound FM 1081. [3] Plaintiff also alleges that the Suburban, which was filled with broadcasting, radar and other storm chasing equipment, some of which dangerously obstructed Yarnall and Williamson's field of vision on the day of the subject accident, was being operated by and for the benefit of TWC as a mobile broadcasting studio and to film severe weather and to collect film footage for the TWC show "STORM WRANGLERS, SEASON 2," a television show that starred Williamson and Yarnall as storm chasers when it collided with JAEGER's vehicle. [4]

The subject accident was not an isolated incident. Yarnall and Williamson had a history of reckless driving when storm chasing and filming TWC's television programming, which was well known among other storm chasers and TWC and abundantly documented. [5] Before the subject accident that claimed their lives and Jaeger's, the two habitually ignored basic traffic safety laws, dangerously driving at excessive speeds, running stop signs and ignoring traffic control devices. [6] Indeed, the pair ran four stop signs alone on the day of the subject accident _before_ running a fifth stop signing causing the collision that took Jaeger's life—one of these prior stop signs being located at the _same_ intersection as the collision. [7]

More importantly, for purposes of this Motion, the pair's refusal to follow basic traffic safety laws should not be attributed solely to the actions of the Suburban's driver, Yarnall.

---

[2] Pl's First Amend. Compl. at ¶¶ 1, 7-8, 11-15, 17-21 and 27.
[3] Pl's First Amend. Compl. at ¶¶ 2, 7-8, 11-15, 17-21 and 27-30.
[4] Pl's First Amend. Compl. at ¶¶ 2 and 31-32.
[5] Pl's First Amend. Compl. at ¶¶ 2, 28, 30, 33-34, 38-40 and 42-50.
[6] Pl's First Amend. Compl. at ¶¶ 2, 30, 33-34, 38 and 42-50.
[7] Pl's First Amend. Compl. at ¶ 30.



LAW OFFICES OF
ROBERT A. BALL
225 BROADWAY, SUITE 2200
SAN DIEGO, CA 92101-5019
TELEPHONE 619-234-3913

The operative pleading states that Yarnall and Williamson (as well as all of the named Defendants) were joint venturers, aiders and abettors, co-conspirators and each other's agent, principal, employee and/or alter ego. [8] These allegations are not mere conclusions. Williamson and Yarnall were on-air partners for TWC's show "STORM WRANGLERS," where they worked as a storm chasing team and operated the Suburban as a mobile studio for the network. [9] They were working in these capacities up to the moment of impact.

> Williamson and Yarnall were working in these capacities at the time of the collision. More specifically, Williamson and Yarnall were filming severe weather and live-streaming the footage to Williamson's Facebook account and YouTube channel, as well as to TWC's Facebook account, at the moment the two vehicles collided when the Suburban driven by Yarnall ran the stop sign for its path of travel on Northbound FM 1081. The video Williamson live-streamed to his YouTube channel, "03-28-17 Tracking Storms in West Texas" ("Video"), contains this footage. The duration of the Video is 2 hours, 28 minutes, and 21 seconds ("2:28:21"), and it showcases Williamson and Yarnall's travels throughout Texas that day. [10]

Williamson was not simply a passive occupant at the time of the collision. For example, it was his job to operate the broadcasting and storm tracking equipment, which so dangerously obstructed the windshield of his vehicle.

> In a December 29, 2016 interview on the podcast "Storm Front Freaks," Williamson stated, "If anyone's ever seen [the Suburban], they wonder how I get in it. I've got a pretty good-sized computer sitting here in front of me and one camera up in the windshield and then I've got another console here that I run a camera that's actually up on top of my vehicle. Then I've got up on the dash a live view that I actually stream back to TWC with. It's kind of like crawling into a cockpit. There's not a lot of room." In another live-stream broadcast uploaded to his YouTube channel two days before the subject accident titled "03-26-17 Tracking Storms in Okla and Texas", Williamson actually states at mark 13:09 on the stream, while speaking live with TWC, "A lot of times, you can see more in your camera lens than you can actually by eye, so I've actually got a screen in front of me that I pretty much watch and a lot of times I can see more on it than by looking out the windows." [11]

---

[8] Pl's First Amend. Compl. at ¶¶ 24-30.
[9] Pl's First Amend. Compl. at ¶¶ 2, 27-32, 35-40, 42 and 48-50.
[10] Pl's First Amend. Compl. at ¶ 28.
[11] Pl's First Amend. Compl. at ¶ 31, p. 13, ll. 13-27.



LAW OFFICES OF
ROBERT A. BALL
225 BROADWAY, SUITE 2200
SAN DIEGO, CA 92101-5019
TELEPHONE 619-234-3913

Williamson also, at all relevant times, directed Yarnall's driving and navigated for the pair while they chased storms. [12]

> Williamson and Yarnall show time and again their disregard of basic traffic safety laws. In just fourteen (14) of these videos (a mere fraction of roughly 223 posted videos), the pair runs approximately eighty (80) stop signs, four (4) red lights, and one (1) out-of-service traffic light. Williamson, who directed Yarnall's driving while storm chasing, can often be heard saying, "Clear," informing Yarnall that he (Yarnall) has the go-ahead to ignore the stop signal. Further, they frequently drove at high speeds in severe weather conditions and made dangerous, illegal passes of other cars, even with hail on the ground. Williamson can sometimes be heard instructing Yarnall to make these maneuvers, as one example: "If you can, get around them." There are also numerous instances of the pair driving on the wrong side of the road, both by accident and by design. Williamson also frequently encouraged Yarnall to drive more aggressively in order to get into better positions from which to film storms, especially when they were out of position or in the wrong town. He often made comments like: "Go, go, go Randy. This is something you don't get much. Keep going"; "That way, straight ahead, just lay it on"; "Keep going, keep going Randy"; "Get on it, get on it, come on, get it up there. Take it out of four-wheel drive"; "Fifty – not going fifty. Crank it"; "Just go as hard as you can." "Get back in it if you can." "We're getting out of it." "See if you can get in this one"; and "Gonna need to get up here as quick as we can. Just do what you can do to get us up there." Williamson even joked about Yarnall's aggressive driving: "We're gonna be testing Randy's driving skills today"; "Yeah, I got Randy driving. He's my nitrous tanks"; and "I could say you drove your ass off." [13]

In fact, it was Williamson who directed and encouraged Yarnall to repeatedly violate traffic safety laws and to inappropriately act as first responders and even bragged about it. [14]

> The bravado of TWC, Williamson and Yarnall are also demonstrated in these two episodes and the out and out actual boasting, touting and braggart of Williamson and Yarnall knowingly breaking the law is also evident. Williamson states in the program that "Randy would go anywhere I tell him to go, ask him to go, anywhere I ask him to go." (TFS at 31:10). Williamson states in Episode 1 that "Randy would drive through a brick wall if I told him to." (OED at 13:37). Williamson is interviewed by TWC for inclusion in the episode One Epic Day claiming that Yarnall "just goes where

[12] Pl's First Amend. Compl. at ¶¶ 2, 33, 40, 42-44 and 48-49.

[13] Pl's First Amend. Compl. at ¶ 33, p. 14, ll. 13-28 and p. 15, ll. 1-5.

[14] Pl's First Amend. Compl. at ¶¶ 33-34, 40 and 48-50.



LAW OFFICES OF
ROBERT A. BALL
225 BROADWAY, SUITE 2200
SAN DIEGO, CA 92101-5019
TELEPHONE 619-234-3913

I say to go" and the very next scene edited into the program by TWC's staffing shows Williamson and Yarnall sitting at a red light when Williamson says to him "clean, go" and Yarnall drives through the red light (OED at 26:28-27:30). TWC's own editors found, edited and used video tape feed that supports Williamson's claims that Yarnall will drive through a brick wall, go wherever he tells Yarnall to go and do whatever he tells Yarnall to do, demonstrating that by showing Williamson having Yarnall drive through a red light right after a truck drives through the intersection from right to left in front of them. Once, when Williamson states "just lay it on" and "get on it" and Yarnall responds "tell me what to do" and "I can't see", Williamson states "That's ok" (OED at 35:50). [15]

## II. STANDARDS FOR DISMISSAL

Motions to dismiss pursuant to Rule 12(b)(6) are generally disfavored in the law and a court will rarely encounter circumstances that justify granting them. [16] The court may dismiss a claim only when it is clear that no relief can be granted under any set of facts that could be proven consistent with the complaint's allegations. [17] A Rule 12(b)(6) motion should be denied unless it appears beyond doubt that plaintiff is unable to prove a set of facts to support his claim that would entitle him or her to relief. [18] Plaintiff is not required to set forth in detail the facts upon which the claim is based. Rather, the Rules require only "a short plain statement of the claim" and sufficient facts to state a facially plausible right to recover to provide defendant fair notice of the claim and its supportive grounds. [19] Further, the court may not look beyond the pleadings and must accept as true the complaint's allegations and view them in the light most favorable to plaintiff. [20] The Rules also dictate that the pleadings be liberally construed "as to do substantial justice." [21]

/ / /

/ / /

---

[15] Pl's First Amend. Compl. at ¶ 49, p. 23, ll. 26-28 and p. 24, ll. 1-14.
[16] *Mahone v. Addicks Utility District of Harris County,* 836 F.2d 921, 926 (5th Cir. 1988).
[17] *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1983).
[18] *Campbell v. Wells Fargo Bank,* 781 F.2d 440, 442 (5th Cir. 1986).
[19] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).
[20] *Cinel v. Connick,* 15 F.3d 1338, 1341 (5th Cir. 1994).
[21] *Mahone,* 836 F.2d at 926.

LAW OFFICES OF
ROBERT A. BALL
225 BROADWAY, SUITE 2200
SAN DIEGO, CA 92101-5019
TELEPHONE 619-234-3913

## III. PLAINTIFF HAS STATED CLAIMS UPON WHICH RELIEF MAY BE GRANTED

### a. The First Amended Complaint sufficiently pleads that Williamson and Yarnall were engaged in a joint enterprise.

Taking the First Amended Complaint's allegations as true, Plaintiff has certainly pled sufficient facts to provide plausible bases by which Defendant would be liable under the operative pleading's Count One for negligence and gross negligence. Although Plaintiff claims that Yarnall was the driver of the Suburban in the Subject Accident, she also alleges that Williamson was more than just a passive occupant. The operative pleading alleges that, at all relevant times, Yarnall and Williamson were joint venturers, aiders and abettors, co-conspirators and each other's agent, principal, employee and/or alter ego. [22] To support this claim, the operative pleading states facts to show that Williamson and Yarnall were on-air partners on "STORM WRANGLERS," where they worked as a storm chasing team and operated the Suburban as a mobile studio for the TWC and were working in this capacity when they ran the stop sign and caused the collision that killed Jaeger. [23] Williamson directed Yarnall's driving, at all times, and navigated for the pair while they chased storms. [24] More importantly, it was Williamson who directed and encouraged Yarnall to repeatedly violate traffic safety laws and to inappropriately act as first responders. [25]

Taking such allegations as true, Plaintiff has pled more than sufficient facts to show that Yarnall and Williamson were engaged in a joint enterprise at the time of the Subject Accident to warrant a finding of liability against Williamson, even though he was not the driver of the Suburban at the time. [26] To establish the existence of a joint enterprise, four elements must exist:

---

22 Pl's First Amend. Compl. at ¶¶ 24-30.
23 Pl's First Amend. Compl. at ¶¶ 2, 27-32, 35-40, 42 and 48-50.
24 Pl's First Amend. Compl. at ¶¶ 2, 33, 40, 42-44 and 48-49.
25 Pl's First Amend. Compl. at ¶¶ 33-34, 40 and 48-50.
26 *Rhea v. Williams,* 802 S.W.2d 118, 120-122 (Tex. App.—Fort Worth 1991) [quoting *Shoemaker v. Estate of Whistler,* 513 S.W.2d 10, 16–17 (Tex.1974)].



LAW OFFICES OF
ROBERT A. BALL
225 BROADWAY, SUITE 2200
SAN DIEGO, CA 92101-5019
TELEPHONE 619-234-3913

> "(1) [A]n agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. [27]

The court's holding in *Rhea* is instructive here. In *Rhea*, plaintiff, individually and on behalf of her husband and the husband's estate (collectively, "Plaintiffs"), sued defendant truck driver and driver's employer after a car driven by plaintiff collided with defendant driver's truck. Plaintiff's husband, who was a passenger in plaintiff's vehicle at the time of the collision, was severely injured. Plaintiffs filed suit against the driver's employer for damages arising from the collision. At trial, the jury found plaintiff 77% at fault and the truck driver 23% at fault.

The jury responded positively to two questions of the trial court's charge. The questions inquired as to whether plaintiff was acting as the agent of her husband and if the two were engaged in a joint enterprise when the accident occurred. The jury's affirmative responses to these two questions caused plaintiff's negligence to be imputed to her husband and prevented Plaintiffs from recovering on all claims.

In affirming the jury's verdict, the Court of Appeals found a sufficient factual basis to conclude that all four elements of a joint enterprise were shown to exist to attribute plaintiff's negligence to her husband. The court found that an agreement between Plaintiffs could be implied from their joint travel throughout the day of the collision. The common purpose carried out by Plaintiffs was the delivery of tax papers to their tax consultant. The delivery of the tax papers concerned Plaintiffs' mutual pecuniary interest. Plaintiff's husband testified that they were in Fort Worth on "business" the day the accident occurred. It also appeared that plaintiff and her husband each had an equal voice in the direction of the events occurring that day. They each attended to personal matters. Plaintiff purchased some facial cream and her husband got a haircut. Plaintiff also drove

---

[27] *Id.*; see also *Fuller v. Flanagan,* 468 S.W.2d 171, 172-174 (Tex. App.—Fort Worth 1971).



LAW OFFICES OF
ROBERT A. BALL
225 BROADWAY, SUITE 2200
SAN DIEGO, CA 92101-5019
TELEPHONE 619-234-3913

out to see the shopping center at her husband's request. In short, the court found plaintiff and her husband each had a voice in deciding the day's transactions. [28]

Based on the court's ruling in *Rhea*, each of the elements necessary to find that Williamson and Yarnall were engaged in a joint enterprise are sufficiently pled here. Williamson and Yarnall expressly agreed to work as on-air television personalities and storm chasers for TWC. [29] At the time of the collision, they had a common purpose and pecuniary interest—tracking storms and recording video footage of weather events for TWC. [30] Finally, Williamson's direction and control of Yarnall's driving during storm chasing shows he had the requisite equal right of control in the enterprise. [31] Thus, Plaintiff has more than adequately pled a basis to assert a claim for negligence against Williamson. [32]

**b. The First Amended Complaint sufficiently pleads that Williamson breached an independent duty as passenger of the Suburban.**

Plaintiff has also adequately alleged that Williamson breached an independent duty owed to Jaeger as passenger of the Suburban.

Passengers ordinarily owe no duty to keep a lookout and are entitled to rely on the driver to keep watch. [33] This duty will normally not arise even when the passenger, if alert, could have intervened. [34] However, a passenger will have a duty to keep a lookout if there are exceptional circumstances. [35] "A passenger may rely on the driver to keep watch unless she knows from past experience, or from the manner in which the vehicle is being driven on the particular trip, that the driver is likely to be inattentive or careless."[36] Further,

---

[28] *Rhea*, 802 S.W.2d at 121.
[29] Pl's First Amend. Compl. at ¶¶ 2, 27-32, 35-40, 42 and 48-50.
[30] Pl's First Amend Compl. at ¶¶ 2, 24 and 27-33.
[31] Pl's First Amend. Compl. at ¶¶ 2, 33, 40, 42-44 and 48-49.
[32] *Rhea,* 802 S.W.2d at 120-122; *Fuller,* 468 S.W.2d at 172-174.
[33] *Edmiston v. Texas & N.O.R. Co.,* 138 S.W.2d 526, 530 (Tex. Com. App. 1940, opinion adopted).
[34] *Id.*; *Dudley v. Whatley,* 400 S.W.2d 773, 775-776 (Tex. Civ. App.—Houston 1966).
[35] *Castilleja v. Southern Pacific Co.,* 406 F.2d 669, 673 (5th Cir. 1969); *Edmiston,* 138 S.W.2d at 530.
[36] *Choctaw Nation of Okla. v. Sewell,* 2018 WL 2410550 (Tex. App.—Dallas 2018), quoting *Adams v. Morris,* 584 S.W.2d 712, 716 (Tex. App.—Tyler 1979); See also *Tipton v. Stuart,* 480 S.W.2d 795, 798-799 (Tex. App.—Ft. Worth 1972).



LAW OFFICES OF ROBERT A. BALL
225 BROADWAY, SUITE 2200
SAN DIEGO, CA 92101-5019
TELEPHONE 619-234-3913

"[A] passenger must protest the driver's excessive speed if it is such that a reasonable man would realize its excessive character" and "may not abandon the exercise of his own faculties and rely solely upon the driver when the passenger knows the vehicle is being driven in a reckless or careless manner." [37] The automobile passenger's duty is measured by the same standard of care as that of the driver—that of a reasonably prudent person under like circumstances. [38]

Applying these standards to the allegations of the First Amended Complaint, Plaintiff has adequately alleged a claim for negligence based on Williamson's breach of his duty as a passenger. Williamson was certainly aware of Yarnall's dangerous driving, yet did nothing to discourage or stop it. On the day of the accident alone, Williamson passively sat while Yarnall ran four stop signs before the collision and did nothing. [39] Indeed, Williamson directed Yarnall to drive irresponsibly, which ultimately led to the subject accident. [40] This control over the operation of the Suburban and his awareness and encouragement of Yarnall's reckless driving meant he owed a duty to Jaeger to ensure its safe operation—that of a reasonably prudent person under like circumstances. [41] His breach of that duty, as described in detail in the First Amended Complaint (i.e., his refusal to stop Yarnall's dangerous driving and his active encouragement of same), means that a valid claim for negligence based on his duty as a passenger was adequately pled.[42]

**c. The First Amended Complaint sufficiently pleads a claim for gross negligence against Williamson.**

Plaintiff's claim against Williamson for gross negligence is also sufficiently alleged. This cause of action, which has both subjective and objective elements, is statutorily

---

37 *Adams,* 584 S.W.2d at 716; *Tipton,* 480 S.W.2d at 798-799.
38 *Id.*
39 Pl's First Amend. Compl. at ¶ 30. See *Tipton,* 480 S.W.2d at 798-799.
40 Pl's First Amend. Compl. at ¶¶ 33-34, 40 and 48-50.
41 *Adams,* 584 S.W.2d at 716-717, (Where passenger retained authority to direct and supervise manner in which vehicle was operated, car was unfamiliar to the driver, street signs warned that children played in area and passenger diverted driver's attention from road, passenger owed duty to pedestrians in area to keep lookout or request driver to slow down or stop).
42 *Id.;* See also *Tipton,* 480 S.W.2d at 798-799.



LAW OFFICES OF
ROBERT A. BALL
225 BROADWAY, SUITE 2200
SAN DIEGO, CA 92101-5019
TELEPHONE 619-234-3913

defined as an act or omission:

> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
>
> (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others. [43]

"Under the first, objective element, an 'extreme risk' is not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." [44] The second, subjective element, requires a showing that "defendant knew about the peril, but its acts or omissions demonstrated that it did not care." [45] However, under this element, "awareness of an extreme risk does not require proof that the defendant anticipated the precise manner in which the injury would occur to identify to whom the injury would befall." [46]

Williamson's alleged conduct satisfies both elements to state a claim for gross negligence. His acts and omissions, when viewed objectively from his standpoint, certainly involved "an extreme degree of risk, considering the probability and magnitude of the potential harm to others." [47] Williamson was clearly objectively aware that his direction of Yarnall's driving while storm chasing posed an extreme danger to others. That is why he acted as lookout to guide Yarnall through red stoplights, stop signs and while the latter drove down roadways in the wrong direction. [48] Further, he was definitely cognizant of the dangerous obstruction of the windshield posed by all the equipment he operated in the Suburban. [49] Williamson's egging on Yarnall to repeatedly disregard basic traffic safety laws and his insistence on storm chasing and operation of a mobile studio

---

[43] Tex. Civ. Prac. & Rem. Code § 41.001(11)(A) and (B).
[44] *Raynor v. Dillon,* 501 S.W.3d 143, 147 (Tex. App.—Texarkana 2016) (citing *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex.1998).
[45] *Ellender*, 968 S.W.2d at 921.
[46] *U–Haul Int'l, Inc. v. Waldrip,* 380 S.W.3d 118, 139 (Tex. 2012).
[47] Tex. Civ. Prac. & Rem. Code § 41.001(11)(A); *Raynor,* 501 S.W.2d at 150-151.
[48] Pl's First Amend. Compl. at ¶¶ 33, 42-46 and 48-50.
[49] Pl's First Amend. Compl. at ¶¶ 31-32.



LAW OFFICES OF
ROBERT A. BALL
225 BROADWAY, SUITE 2200
SAN DIEGO, CA 92101-5019
TELEPHONE 619-234-3913

with an irresponsibly obstructed windshield also show his requisite "conscious indifference" to satisfy the second, subjective element of gross negligence. [50]

## IV. DEFENDANT'S ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT PER FEDERAL RULE OF CIVIL PROCEDURE 12(e) SHOULD BE DENIED.

Federal Rule of Civil Procedure 12(e) provides in part:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. [51]

However, Rule 12(e) motions are generally disfavored because they are appropriate only where the complaint is so indefinite that defendant cannot ascertain the nature of the claim being asserted and thus, cannot reasonably be expected to frame a proper response. [52] Rule 12(e) motions must be read in light of Rule 8, which does not mandate plaintiff set out in detail the facts upon which he bases his claim. [53] Rule 8 only requires a short and plain statement of the claim that will provide notice of the nature of plaintiff's claim and its supportive grounds. [54] At the pleading stage, plaintiff need only allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of [an essential element of plaintiff's claim]." [55]

Here, Plaintiff has more than adequately pled negligence and gross negligence claims against Williamson such that Defendant may be able to reasonably prepare a response. [56] As previously set forth above, the First Amended Complaint sufficiently alleges that Williamson and Yarnall were involved in a joint enterprise to warrant the

---

50 Pl's First Amend. Compl. at ¶¶ 28-33 and 42-44, 46 and 48-50; *Raynor,* 501 S.W.2d at 150-151.

51 Fed. R. Civ. P. 12(e).

52 *Tempur-Pedic Int'l Inc. v. Angel Beds LLC*, 902 F.Supp.2d 958, 970-971 (SD TX 2012)—"The touchstone" is whether defendant can reasonably prepare a response.

53 *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

54 *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

55 *Id.*

56 Fed. R. Civ. P. 12(e); *Tempur-Pedic Int'l Inc. v. Angel Beds LLC*, 902 F.Supp.2d at 971.



LAW OFFICES OF
ROBERT A. BALL
225 BROADWAY, SUITE 2200
SAN DIEGO, CA 92101-5019
TELEPHONE 619-234-3913

imputation of Yarnall's negligence to Williamson. [57] Plaintiff has also adequately pled a claim for negligence based on Williamson's breach of his duty as a passenger due to his inaction in the face of Yarnall's irresponsibly dangerous driving and active encouragement and direction of same. [58] Finally, the operative pleading has sufficiently and clearly pled Williamson's gross negligence due to his alleged acts and omissions, which objectively involved an extreme degree of risk and subjectively evidenced a conscience disregard for the welfare of others. [59] Consequently, Defendant's Rule 12(e) motion should be denied because the operative pleading has more than adequately provided Defendant notice of the nature of the claims against him and their supportive grounds. [60]

## V. <u>PLANTIFF REQUESTS LEAVE TO AMEND IN THE EVENT THE MOTION IS GRANTED.</u>

Plaintiff believes she had more than adequately pled her claims against Defendant. Notwithstanding, Plaintiff requests leave to amend the First Amended Complaint if the Court is inclined to grant the Motion pursuant to Rule 12(b)(6) or Rule 12(e).

## VI. <u>CONCLUSION AND PRAYER</u>

For the reasons stated herein, Plaintiff requests that the Court deny the Motion. In the alternative, leave is requested to amend the First Amended Complaint if the Court is inclined to grant the Motion pursuant to Rule 12(b)(6) or Rule 12(e).

/ / /

/ / /

/ / /

---

[57] Pl's First Amend. Compl. at ¶¶ 2, 24, 27-33, 35-40, 42-44 and 48-50; See *Rhea,* 802 S.W.2d at 120-122; *Fuller,* 468 S.W.2d at 172-174.

[58] Pl's First Amend. Compl. at ¶¶ 28-30, 33-34, 40 and 48-50; See *Tipton,* 480 S.W.2d at 798-799; *Adams,* 584 S.W.2d at 716-717.

[59] Tex. Civ. Prac. & Rem. Code § 41.001(11)(A) and (B); *Raynor,* 501 S.W.2d at 150-151. Pl's First Amend. Compl. at ¶¶ 28-33, 42-44, 46 and 48-50.

[60] *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555.



LAW OFFICES OF
ROBERT A. BALL
225 BROADWAY, SUITE 2200
SAN DIEGO, CA 92101-5019
TELEPHONE 619-234-3913

DATED: May 10, 2019

LAW OFFICES OF ROBERT A. BALL

By: [signature]
ROBERT A. BALL, SBN (CA) 00761
JOHN M. DONNELLY, SBN (CA) 156965
ADMITTED *PRO HAC VICE*
Plaintiffs KAREN DI PIAZZA, Individually and as Natural Mother to CORBIN JAEGER and as Executor/Administrator/Representative of the Estate of CORBIN JAEGER, DECEASED
225 Broadway, Suite 2220
San Diego, California 92101
Telephone (619) 234-3913; Fax (619) 234-4055
rball@robertballapc.com
jdonnelly@robertballapc.com

DATED: May 10, 2019

MCCLESKEY HARRIGER BRAZILL & GRAF LLP

By: *Mary Kathleen Davidson*
BENJAMIN H. DAVIDSON, II, SBN 05430590
MARY KATHLEEN DAVIDSON, SBN 24070919
Plaintiffs KAREN DI PIAZZA, Individually and as Natural Mother to CORBIN JAEGER and as Executor/Administrator/Representative of the Estate of CORBIN JAEGER, DECEASED
5010 University Avenue, 5th Floor
Lubbock, Texas 79413
Telephone (806) 796-7306; Fax (806) 796-7365
bdavidson@mhbg.com
kdavidson@mhbg.com

**CERTIFICATE OF SERVICE**

The undersign hereby certifies that he has served the above and forgoing document in accordance with applicable procedural rules, via ECF, on all counsel of record on this 13th day of May, 2019.

ROBERT A. BALL